UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA F. LITTLE,

               Plaintiff,                    Case No. 4:16-cv-11968
                                              District Judge Terrence G. Berg
v.                                         Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

**<u>RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (DE 17), DENY DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 22), REVERSE THE COMMISSIONER'S
DECISION, AND REMAND FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS REPORT AND RECOMMENDATION</u>**

I.      **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment, **DENY** Defendant's motion for summary judgment, **REVERSE** the

Commissioner's decision, and **REMAND** this case to the Commissioner and the

ALJ under Sentence Four of § 405(g) for further consideration consistent with the

report below.

II.     **REPORT**

       Plaintiff, Debra F. Little, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment, the Commissioner's memorandum in opposition and cross motion for summary judgment, Plaintiff's reply, and the administrative record (DE 14).

### A.     Background

On October 7, 2013, Plaintiff filed an application for DIB, alleging she has been disabled since May 14, 2010. (R. at 26, 182-83.) Plaintiff's application was denied and she sought a *de novo* hearing before an administrative law judge ("ALJ"). ALJ Gregory Holiday held a hearing on October 16, 2014. (R. at 47-85.) On March 28, 2016, ALJ Holiday issued an opinion finding Plaintiff to not be disabled. (R. at 25-41.)  The Appeals Council denied Plaintiff's request for review on March 28, 2016. (R. at 1-3.) ALJ Holiday's decision thus became the Commissioner's final decision. Plaintiff then timely commenced the instant action.

### B.     Plaintiff's Medical History and Hearing Testimony

Plaintiff has a fairly extensive history of both physical and mental health conditions. The relevant medical evidence in the record will be addressed below, as necessary.

At the October 16, 2014 hearing, Plaintiff testified to falling frequently.  She noted that she had been prescribed a walker, and then a cane when her doctor felt she was "too dependent" on the walker.  (R. at 53.)  She indicated that she did not help with household chores because of the lifting and bending involved, but that she enjoyed shopping at the grocery store and at "little strip malls."  (R. at 56 and 58.)  She noted that she always has pain in her lower back, knees, and neck and sits in her recliner chair most of the day.  (R. at 65-66.)  She also testified to mental health issues, including depression and anxiety, which cause her to "shut[] down."  (R. at 68.)

## C.  The Administrative Decision

In his December 22, 2014 decision, the ALJ first concluded that Plaintiff met the insured status requirements through December 31, 2011.  (R. at 27.)  At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff had not

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

engaged in substantial gainful activity during the period from her alleged onset date of May 14, 2010 through her date last insured of December 31, 2011. (Id.)

At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: obesity; left knee disorder, status post arthroscopic repair; lumbar disc disorder, status post two-level fusion; cervical disc disorder with spinal stenosis, status post injections; recurrent sinusitis; migraine headaches with Empty Sella syndrome; post-traumatic stress disorder; anxiety disorder; and depression. (R. at 29.)[2] At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 28-32.)

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] Empty Sella Syndrome is a "disorder that involves the *sella turcica*, a bony structure at the base of the brain that surrounds and protects the pituitary gland." *National Institutes of Health*, Empty Sella Syndrome Information Page, available at https://www.ninds.nih.gov/Disorders/All-Disorders/Empty-Sella-Syndrome-Information-Page (last viewed Aug. 10, 2017). Symptoms range from nothing to those "resulting from partial or complete loss of pituitary function" including "headaches, low sex drive, and impotence." Id.

Prior to undertaking Step 4, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that she could perform light work,[4] with the following limitations:

> allowing for alternating between sitting and standing up to 3 times per hour, only occasional operation of foot controls with the left lower extremity, no climbing of ladders, ropes or scaffolds, only brief (up to 10 percent of the work day) climbing of ramps or stairs, only occasional balancing or stooping, only brief crouching, no kneeling or crawling, limited to jobs that could be performed while using a handheld assistive device such as a cane for ambulation, avoiding concentrated exposure to environmental irritants (such as dusts, gases, fumes, and odors) and poorly-ventilated areas, and limited to simple, routine tasks employed in a low-stress job, defined as requiring no more than occasional decision-making and no more than occasional changes in the work setting, only occasional interaction with the public and coworkers, and allowing for being off-task up to 10 percent of the workday for health reasons.

(R. at 32.)   At **Step 4**, the ALJ concluded that Plaintiff could not perform her past relevant work.  (R. at 40.)  At **Step 5**, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy.

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

(Id.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at id.)

### D.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.  Analysis

Plaintiff advances three arguments as to why the ALJ committed reversible error warranting remand.  First, she asserts that the ALJ failed to appropriately analyze obesity in combination with her other impairments.  Second, she contends that the ALJ erred in her weighing of opinion evidence with respect to her treating physician, Dr. Radha Chitturi.  Finally, she posits that the ALJ erred by discounting her credibility. The Commissioner opposes the motion, arguing that the ALJ's decision is supported by substantial evidence.  I recommend that the Court remand on Plaintiff's second argument because the ALJ failed to consider the opinion of her treating physician, but will address each argument in turn.

#### 1.  Obesity

When obesity is at issue, an ALJ need not employ a "particular mode of analysis" when considering its impact.  *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006).  The ALJ must, however, "consider the claimant's obesity in combination with other impairments at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).  While there is no longer a Listing for obesity, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."  S.S.R. 02-1P.  The burden is on Plaintiff to show specifically "how the obesity, in combination with other impairments, limited her

[or his] ability to a degree inconsistent with the ALJ's RFC determination." *Smith v. Astrue*, 639 F. Supp. 2d 836, 846-47 (6th Cir. 2009).

Here, the ALJ found Plaintiff's obesity to be a severe impairment at Step 2. He later went on at Step 3 to note that he had considered her obesity in the context of the Listings for musculoskeletal, respiratory, digestive, and cardiovascular impairments, but concluded that her impairments did not meet those Listings. Finally, the ALJ considered the impact of Plaintiff's obesity on her RFC with the following statement:

> The light residual functional capacity more than adequately accommodates for weight. The claimant has a history of obesity with a BMI of 33. In October 2007, exhibit 5F page 52, with some intentional weight loss in 2008, and by the time of hearing weighed 197 pounds for her 64 inch frame. As discussed above, her obesity has been considered using the criteria of the musculoskeletal, respiratory, digestive and cardiovascular impairments under Listings 1.00Q, 3.ooI, and 4.00F, respectively, and considered for the effect on the same body systems.

(R. at 33.)

Plaintiff argues that the ALJ's analysis was insufficient because he provides "no clue as to how it was considered," in contravention of S.S.R. 02-1p. (DE 17 at 12.) She contends that the ALJ has therefore failed to provide an accurate and logical bridge between the evidence and ultimate result, and therefore the matter should be remanded. Defendant counters that the ALJ provided a sufficient

discussion of obesity and asserts that Plaintiff has made no showing that she is more limited than the ALJ assessed in her RFC.

I find no error with the ALJ's obesity analysis. The Sixth Circuit considered a similar case and concluded that the ALJ appropriately took the claimant's obesity into account by:

> stating in his decision that "degenerative disc disease of the lumbar spine, obesity, hypertension, and major depressive disorder, can reasonably be expected to result in some degree of functional and physical limitations[.]" The absence of further elaboration on the issue of obesity *likely stems from the fact that Essary failed to present evidence of any functional limitations resulting specifically from her obesity*.

*Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004). Similarly, here, the ALJ specifically noted that he considered the impact of Plaintiff's obesity on her other impairments when assessing the RFC and Plaintiff has adduced no evidence of functional limitations resulting specifically from her obesity, such that a more restrictive RFC was required. (R. at 33.) Nor did Plaintiff testify to the effects of her obesity at the hearing, even after the ALJ asked about her current weight and any recent weight changes. (R. at 51-52.) In the four and a half pages of pertinent transcript (R. at 64-69), it appears that questioning from her own attorney failed to explore this topic any further. *See, e.g., Griffith v. Comm'r of Soc. Sec.*, No. Civ. A. 12-10579, 2014 WL 1213257, at *19 (E.D. Mich. Feb. 14, 2014) *report and recommendation adopted*, No. 12-15079, 2014 WL 1224807

(E.D. Mich. Mar. 24, 2014) (noting that Plaintiff's failure to testify about the limiting effects of obesity provided was evidence supporting the ALJ's limited consideration).  Accordingly, I conclude that the ALJ appropriately considered Plaintiff's obesity and provided this Court with an accurate and logical bridge from the evidence to the result, which was a limitation to light work.

**2.     The ALJ committed reversible error by failing to consider the opinion of treating physician, Dr. Chitturi.**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]"  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

objective medical findings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[5]  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

---

[5] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson*, 378 F.3d at 547). *See also, Betty v. Comm'r of Soc.*

*Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016),

*report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554

(E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the

importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

Plaintiff's treating physician, Dr. Chitturi, issued a September 9, 2014

physical residual functional capacity questionnaire calling her prognosis

"guarded," indicating that she is incapable of even low stress jobs because of her

physical and mental conditions, and noting that she would likely be off-task 25%

or more of the time and absent more than four days per month.  (R. at 1420-23.)

The ALJ did not address Dr. Chitturi's opinion in his analysis, which Plaintiff contends was a violation of the treating physician rule.

Defendant asserts that the ALJ's failure to mention Dr. Chitturi's RFC was harmless error because it post-dates the date last insured (December 2011) by almost three years and Plaintiff did not complain of pain during the relevant time period, making the opinion immaterial. Citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (limiting the relevant time period to that "on or before" the claimant's date last insured). Defendant is correct that the opinion was completed well after the relevant time period, and does not specify the time period it covers. However, Dr. Chitturi began treating Plaintiff on August 2, 2011, and saw her twice more during the relevant time period. (R. at 621, 648, and 670.)

The Commissioner's reliance on *Higgs* is misplaced in this instance. There, the Sixth Circuit specifically noted that there was "nothing in the objective medical record credibly suggesting that Mrs. Higgs was significantly affected by any of her impairments on or before" her date last insured. *Id.* at 863. In contrast, in the instant matter, objective medical evidence during the relevant time period supports that Plaintiff was complaining about her pain. Indeed, even Dr. Chitturi's records during the relevant time period make reference to her pain. Specifically, on September 13, 2011, Dr. Chitturi notes that Plaintiff suffers from spasms and sciatica, for which she was prescribed hydrocodone. (R. at 651.) Likewise, on

November 15, 2011, Dr. Chitturi's treatment notes reflect that Plaintiff suffered from spasms and sciatica, for which she was referred to a pain clinic. She also notes that Plaintiff was to "[c]ontinue pain medication as needed." (R. at 623.) This is consistent with other evidence in the record, for example a June 22, 2010 note from Joshua Adler, M.D., that she had "significant' pain residual to her 2008 car accident. (R. at 812.) Additionally, on July 20, 2010, Dr. Adler noted that her hydrocodone needed to be increased to make her back pain manageable. (R. at 810.) Thus, *Higgs* is distinguishable, and the timing of the opinion is merely one factor in the ALJ's evaluation of opinion evidence. *See* 20 C.F.R. 404.1527(c)(2)-(6).

Although the ALJ's failure to mention this treating physician opinion *could* have resulted in harmless error, it is impossible for the Court to discern whether that is the case here because his opinion does not address Dr. Chitturi's opinion *at all*. Per the Regulations, the ALJ "must consider all medical opinions that he or she receives in evaluating a claimant's case." 20 C.F.R. § 416.927(b). Here, the ALJ clearly did not do so. Moreover, the opinion at issue is that of a treating physician, which is generally entitled to deference, and which an ALJ must give good reasons for discounting. Here, while the Commissioner's explanation of the ALJ's *potential* reason for discounting the opinion is somewhat persuasive, it was up to the ALJ to provide that explanation in his opinion. *See Blakely v. Comm'r of*

*Soc. Sec.*, 581 F. 3d 399, 407 (6th Cir. 2009) (finding reversible error where the ALJ placed no findings "on the record" with respect to a treating physician's opinion). Further, this is an instance in which Plaintiff's treating physician has deemed her disabled, leaving her likely to be "especially bewildered" when told by the ALJ that she is not, without even addressing her doctor's opinion. *See Wilson*, 378 F.3d at 544 (internal quotations omitted). As such, I recommend that this matter be remanded to the ALJ for further consideration of Dr. Chitturi's opinion. If the ALJ chooses to discount the opinion, for the reasons outlined in the Commissioner's brief or others, he or she must address those reasons in the opinion, consistent with the Regulations. 20 C.F.R. § 416.927(c)(2). It is not within this Court's authority to reweigh the evidence, much less speculate about what weight would have been given (and why) with respect to a treating physician's opinion that was not even acknowledged by the ALJ.

### 3. The ALJ did not err in weighing Plaintiff's credibility.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado,* 263 Fed. App'x at 475; *see also Beavers v. Sec'y of Health, Ed., and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who

is conducting the hearing, is invaluable, and should not be discarded lightly."). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. It is for this reason that the ALJ's credibility findings have at times been characterized as "unchallengeable." *Payne v. Comm'r Soc. Sec.*, 402 Fed. App'x 109, 113-114 (6th Cir. 2010); see also *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility. It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (alteration omitted). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*; see also *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.").

When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment

that can reasonably be expected to produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 Fed. App'x 370, 371 (6th Cir. 2011). The ALJ made such a determination here, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (R. at 26.) Upon making that finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence." 20 C.F.R. § 404.1529(c)(1-3). A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions. *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3).

Here, the ALJ discounted Plaintiff's credibility for several reasons, including the fact that her complaints of disabling pain were "not consistent with the objective medical evidence and other evidence defined in 20 C.F.R. § 404.1529(c)(4)." (R. at 33.) The ALJ further noted that Plaintiff's treatment was generally conservative and that she had a history of non-compliance with

specialized appointments.  (R. at 34.)  These are sufficient reasons for discounting credibility.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011) (an ALJ is permitted to consider the conservative nature of treatment in assessing Plaintiff's credibility); *Lemle v. Comm'r of Soc. Sec.*, No. 11-10295, 2012 WL 1060111, at *9 (E.D. Mich. Jan. 27, 2012) *report and recommendation adopted* 2012 WL 1069787 (E.D. Mich. Mar. 29, 2012) (recognizing that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible.).

Plaintiff urges the Court to utilize updated guidance from the Social Security Administration to assess this issue, while noting that the new guidance post-dates the ALJ hearing and analysis in this case.  *See* S.S.R. 16-3P, 2016 WL 1119029 (Mar. 16, 2016) (superseding S.S.R. 96-7p).  I am not inclined to scrutinize the ALJ's analysis based upon a standard by which he was not bound at the time he issued his opinion.  In any case, the new guidance does not, as Plaintiff concedes, differ substantially from the prior guidance.  Moreover, there is nothing in the new guidance that would prevent the ALJ from relying on noncompliance and conservative treatment as a way to discount credibility.  I conclude that the ALJ did not err in his assessment of Plaintiff's credibility.

### 4. Remand under Sentence Four for further consideration is appropriate.

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)).

Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Where there is insufficient support for the Commissioner's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (internal quotations omitted)). Here, there is insufficient support for the Commissioner's findings, and the factual issues have

not been resolved.  Specifically, I recommend that the ALJ be directed to re-analyze the record consistent with this report and recommendation, and appropriately consider the opinion of Plaintiff's treating physican, Dr. Chitturi. Accordingly, I recommend that the Court remand this case for rehearing under Sentence Four.

### F.    Conclusion

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g).  Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 17), **DENY** Defendant's motion for summary judgment (DE 22), **REVERSE** the Commissioner of Social Security's non-disability finding, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 14, 2017      s/Anthony P. Patti_____
                                       Anthony P. Patti
                                       UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on August 14, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti